UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>Plaintiff,<br>v.<br><br>INSPIRADA COMMUNITY ASSOCIATION; SATICOY BAY, LLC SERIES 2080 ARTISTIC FLAIR WALK; LEACH, JOHNSON, SONG & GRUCHOW,<br><br>Defendants. | Case No. 2:16-cv-00438-MMD-PAL<br><br>ORDER |

### I.    SUMMARY

This case concerns a homeowner association's ("HOA") foreclosure of property ("the Property") within its development pursuant to Nevada Revised Statutes Chapter 116. Before the Court are two motions filed by Defendant Leach, Johnson, Song & Gruchow's ("LJSG"): (1) Motion to Dismiss Complaint ("Motion") (ECF No. 44) and Motion for Sanctions and Fees Pursuant to FRCP 11 and NRS 18.010 ("Motion for Sanctions") (ECF No. 43). The Court has reviewed Plaintiff Bank of America, N.A.'s ("BANA") respective responses (ECF Nos. 45, 46) and LJSG's replies (ECF Nos. 47, 48). The Court held a hearing on LJSG's motions on June 6, 2017 ("Hearing"). (ECF No. 55.)

For the reasons discussed below, the Court grants LJSG's Motion to Dismiss and denies LJSG's Motion for Sanctions.

### II.    BACKGROUND

#### A.    Statutory Framework

In 1991, the Nevada legislature created the HOA lien statute found in Nevada Revised Statute Chapter 116. *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 410

(Nev. 2014). The statute allows an HOA to place a lien on a residential unit within its common-interest community for any assessment levied against that residential unit.[1] *See* NRS § 116.3116(1) (2011).[2] Once the HOA places a lien on the residential unit, the statute makes the HOA's lien prior to all other liens and encumbrances on the unit, except for: (a) liens and encumbrances recorded before the recordation of the declaration that creates the HOA; (b) a first security interest on the unit recorded before the date where the assessment sought by the HOA became delinquent; and (c) liens for real estate taxes and other governmental assessments against the unit. *See* NRS § 116.3116(2). However, the statute creates a partial exception—an exception to the exception—regarding the priority of a first security interest, e.g., a mortgage, recorded before the date of an assessment delinquency:

> *The [HOA] lien is also prior to all security interests described in paragraph (b)* to the extent of any [maintenance and nuisance-abatement] charges incurred by the association on a unit pursuant to NRS 116.310312 and *to the extent of the assessments for common expenses* [i.e., HOA dues] based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien, unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien…*This subsection does not affect* the priority of mechanics' or materialmen's liens, or *the priority of liens for other assessments made by the association.*

*SFR Investments*, 334 P.3d at 410-11 (citing NRS §116.3116(2)) (emphasis added in original). In other words, this statutory provision allows the HOA to split its lien into two pieces: a superpriority piece and a subpriority piece. The superpriority piece of the HOA's lien consists of the last nine months of unpaid HOA dues as well as maintenance and

---

[1] The statute defines "common-interest community" as "real estate described in a declaration with respect to which a person, by virtue of the person's ownership of a unit, is obligated to pay for a share of real estate taxes, insurance premiums, maintenance or improvement of, or services or other expenses related to, common elements, other units or other real estate described in that declaration." NRS § 116.021(1) (2011).

[2] Nevada Revised Statute Chapter 116 has been amended several times since 2011. In 2015, NRS 116.3116 was amended and reorganized. 2015 Nev. Stat. 1331, 1334. Unless otherwise indicated, references to NRS Chapter 116 are to the 2011 version of the statute because the notice of trustee sale was recorded in August 2013, and the events related to adequate notice arose prior to this date.

2

nuisance-abatement charges. *Id.* at 411. Pursuant to the statute, this superpriority piece is prior to a first deed of trust.[3]

The HOA foreclosure process, NRS §§ 116.31162 - 116.31168, requires an HOA to first notify the owner of the residential unit of the delinquent assessments. NRS § 116.31162(1)(a). If the owner does not pay within 30 days of this notice of delinquent assessment, then the HOA may record a notice of default and election to sell. NRS § 116.31162(1)(b). The homeowner must then be allowed 90 days to pay off the amount of the lien, including costs, fees and expenses incident to enforcement. NRS § 116.31162(1)(c). If the lien is not paid off in this time, then the HOA may proceed with the sale.

A security interest holder is entitled to notice only if it has notified the HOA, before the mailing of the notice of sale, of the existence of the security interest. NRS § 116.311635(1)(b)(2). Specifically, the HOA is required to provide not only the homeowner with notice of default and election to sell, but it must also notify "[e]ach person who has requested notice pursuant to NRS 107.090 or 116.31168(1)" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest." NRS §§ 116.31163(1) - (2). If a holder of a recorded security interest encumbering the residential unit owner's interest has notified the HOA more than 30 days before the notice of default is recorded, the association "or other person conducting the sale" must mail by first-class mail a copy of the notice of default and election to sell within 10 days of the notice being recorded. NRS § 116.31163(2). Absent a holder of a recorded security interest's compliance with these "opt-in" notice requirements, the HOA may proceed with a non-judicial foreclosure sale in the event that the homeowner has still failed to remedy the delinquent assessments.

///

---

[3]By contrast, the subpriority piece consists of all other HOA fees or assessments and is subordinate to the first deed of trust.

3

## B. Relevant Facts

On March 1, 2016, BANA initiated this lawsuit against Inspirada Community Association ("Inspirada"), Saticoy Bay, LLC Series 2080 Artistic Flair Walk ("Saticoy Bay"), and LJSG. (ECF No. 1.) The following facts are taken from the Complaint.

Around April 12, 2010, Tereza Cruz obtained a loan for $172,189, secured by a deed of trust ("DOT") encumbering the Property which is located in the HOA. The DOT was eventually assigned to BANA.

On December 3, 2012, Inspirada recorded a notice of delinquent assessment lien in the amount of $1,325.27, which included assessment, late charge, interest, costs and penalties.[4] On January 22, 2013, Inspirada recorded a notice of default and election to sell to satisfy the delinquent assessment lien. The notice stated that the total amount due to Inspirada was $2,388.83 but did not specify whether it included dues, interest, fees, and collection costs in addition to assessments. On August 12, 2013, Inspirada recorded a notice of trustee's sale, setting the sale for November 14, 2013. The notice also stated that the amount due to Inspirada was $4,220.27, which included estimated costs, expenses, and advances.

On February 8, 2013, BANA requested a ledger from Inspirada in order to identify the super priority amount owed to them. Inspirada refused and instead provided a statement dated April 5, 2013, identifying the total amount allegedly owed. As a result, BANA and its counsel attempted to calculate the superpriority amount—the sum of nine months of common assessments—which they determined was $855. On April 24, 2013, BANA tendered payment of this amount to Inspirada in an attempt to satisfy the superpriority lien amount. LJSG accepted BANA's tender on April 26, 2013.

Inspirada foreclosed on the Property on October 23, 2014, for a sale price of $109,600. A foreclosure deed in favor of Saticoy Bay was recorded on November 20, 2014.

---

[4]The Complaint alleges that Inspirada performed the acts identified in this paragraph "through its agent" LJSG. (ECF No. 1 at 4.)

4

LJSG is the law firm that represented Inspirada prior to and during the HOA foreclosure sale, and conducted the foreclosure sale.

BANA asserts three claims against LJSG and Inspirada: (1) quiet title/declaratory judgment;[5] (2) breach of NRS § 116.1113; and (3) wrongful foreclosure. (*Id.* at 6-13.) Because BANA does not allege that LJSG has expressed an interest in the Property (nor has LJSG itself espoused such an interest (ECF No. 44 at 9), the Court analyzes LJSG arguments in the context of BANA's claims for breach of NRS 116.1113 and wrongful foreclosure claims.[6]

### III. MOTION TO DISMISS (ECF No. 44)

#### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause

---

[5]BANA also asserts this claim against Saticoy Bay. (ECF No. 1 at 6-11.)

[6]NRS § 40.010 provides that where there are conflicting claims to real property, "[a]n action may be brought by any person *against another who claims an estate or interest in real property*, adverse to the person bringing the action[.]" Thus, a quiet title action claim must allege that a defendant asserts an interest in the property.

5

of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

### B. Analysis

LJSG argues that it provided legal services, including collection services, to its client Inspirada and owed no duty to BANA upon which BANA can base it claims.[7] (ECF No. 44 at 3-6.) The acts that LJSG allegedly performed as Inspirada's agent include: recording a notice of delinquent assessment lien; recording a notice of default and election to sell to satisfy the delinquent assessment lien; recording a notice of the HOA sale; accepting BANA's payment to satisfy the superpriority amount owed to Inspirada; and refusing to provide a ledger from Inspirada to BANA. (ECF No. 1 at 4-6.)

At the Hearing, BANA argued that these services do not constitute traditional legal services; rather, the services LJSG performed did not require specialized legal skills or knowledge and were more akin to administrative tasks that could be performed by a lay person. The Court disagrees. First and foremost, LJSG's work in connection with the HOA foreclosure sale requires knowledge of Nevada's statutory scheme for non-judicial

---
[7] Because the Court agrees with LJSG, the Court declines to address LJSG's arguments as to the sufficiency of BANA's pleadings.

6

foreclosure of an HOA lien as established in NRS Chapter 116. The fact that a lay person can also review the statute and implement the HOA foreclosure sale proceedings does not mean the same services performed by an attorney do not amount to legal services that may be rendered on behalf of a client. Moreover, attorneys often represent their clients in legal transactions that require them to perform various administrative tasks that do not involve solely giving legal advice in effectuating those transactions (i.e., directing the recording of real property conveyance documents). Accepting BANA's argument would require the Court to scrutinize each task an attorney performs in a piecemeal fashion to determine whether an attorney's work falls within the purview of permissible legal services and, if not, to determine whether the attorney should be held liable to a third party for services that are not legal in nature. Such an approach would disrupt the attorney-client relationship, which defines an attorney's duty to the client and not to a third party.

BANA also argues that LJSG was acting not as Inspirada's attorney but as the non-judicial foreclosing trustee who conducted the foreclosure sale. (ECF No. 46 at 5.) To the extent BANA compares LJSG's role as the agent for Inspirada to that of a trustee foreclosing on a deed of trust under NRS § 107.080 *et seq.*, such a comparison is inapposite. A deed of trust establishes a triangular relationship whereby a trustee acts on behalf of a mortagagee/beneficiary and owes duties to the mortgagor/trustor under NRS § 107.080 *et seq.* By contrast, NRS § 116.3116 *et seq.* contemplates a unique situation whereby a non-judicial foreclosure sale is conducted by an HOA, as holder of a superpriority lien established by statute, against the interest of the owner of the residential unit who is delinquent in payment of HOA assessments and other fees. Nowhere in NRS §§ 116.3116 through 116.3117, which establishes the HOA superpriority lien and the foreclosure process, does the statute mention a "trustee." Thus, characterizing an entity performing an HOA foreclosure sale on behalf of an HOA as a "trustee" mischaracterizes the relationship established under NRS Chapter 116 between the HOA and the owner of a residential unit.

BANA also contends that attorneys can be held liable where, as here, they acted as debt collectors on behalf of their clients. (*See* ECF No. 42 at 6.) While there are instances where courts have found attorneys to be subject to the Fair Debt Collection Practices Act ("FDCPA") in their role as debt collectors, *see, e.g., Calvert v. Alessi & Koenig, LLC*, Nos. 2:11-CV-00333-LRH-PAL, 2:11-CV-00411-LRH-PAL, 2:11-CV-00442-LRH-PAL, 2:11-CV-01004-ORH-PAL, 2013 WL 592906, at *7 (D. Nev. Feb. 12, 2013), this case does not involve allegations under the FDCPA. Moreover, in cases brought before this Court where attorneys have acted as debt collectors, the claims have been brought by consumers, not alleged third-party beneficiaries like BANA. *See, e.g., Roadhouse v. Patenaude & Felix, A.P.C.*, No. 2:13-cv-00560-GMN-CWH, 2015 WL 1691885 (D. Nev. Apr. 14, 2015).

Finally, BANA insists that LJSG owes it a duty of good faith under NRS § 116.1113, which, according to BANA, imposes "a commercial reasonableness standard on foreclosure of association liens." (ECF No. 46 at 8.) Section 116.1113 provides: "Every contract or duty governed by [NRS Chapter 116] imposes an obligation of good faith in its performance or enforcement." NRS § 116.1113.

However, as LJSG correctly noted, there is no relationship, contractual or otherwise, between LJSG and BANA (ECF No. 44 at 11), a point which BANA does not dispute. Instead, BANA contends that the contract which imposed upon LJSG a duty to act in good faith is the HOA's covenants, conditions, and restrictions ("CC&Rs"). (ECF No. 46 at 10.) Yet, BANA does not allege that LJSG is a party to the CC&Rs, nor does the Complaint mention that compliance with the CC&Rs is the basis for its claim for breach of NRS § 116.1113. The Court finds that BANA has not and cannot allege how LJSG failed to act in good faith in enforcing a contractual duty that LJSG purportedly owed to BANA under NRS Chapter 116.

Additionally, the Complaint fails to point to a specific statutory provision requiring that LJSG, acting as foreclosure trustee for Inspirada, had a duty to BANA. (*See* ECF No. 1 at 11-12.) Instead, the Complaint alleges that LJSG owed BANA a duty to identify the

superpriority amount of the HOA's lien,[8] to notify BANA that their security interest was at risk,[9] and to provide an opportunity to satisfy the superpriority amount to protect its interest. (*Id.* at 12.)

To the extent BANA argues NRS 116.1113 includes an "obligation of good faith and imposes a commercial reasonableness standard of foreclosure of association liens," which LJSG breached (ECF No. 46 at 9-10), this argument is legally infirm.[10] While the sale price of the Property in this case may be commercially unreasonable—the Complaint alleges that the property was sold for less than 66% of the Property's fair market value (ECF No. 1 at 6)—the Nevada Supreme Court has not indicated that attorneys or entities acting on behalf of the HOA in overseeing the foreclosure sale may be held liable if the circumstances surrounding the foreclosure sale are found to be unfair. *See, e.g., SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408 (Nev. 2014) (quiet title action brought by purchaser of property at HOA foreclosure sale against HOA and mortgage lender); *cf. Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222 (D. Nev. 2013) (finding that the mortgage was not extinguished by the HOA foreclosure sale where attorneys were still a listed party to the quiet title action and never moved to be dismissed). Moreover, there are no allegations that LJSG acted unfairly in executing the foreclosure sale. All of BANA's allegations of unfairness surround LJSG's conduct *prior* to the foreclosure sale, specifically where LJSG failed to identify the superpriority lien amount to BANA or to notify BANA that its security interest was at risk.

///

---

[8] It unclear where this duty stems from, as BANA acknowledges that NRS Chapter 116 "fails to provide BANA with a statutorily enforceable mechanism to compel an HOA to inform BANA of the sum of the HOA super priority amount." (ECF No. 1 at 8.)

[9] Yet, the Complaint alleges that NRS §§ 116.31162 and 116.311635 "do not require than an HOA provide BANA with written notice of the sum that constitutes the super priority portion of the assessment lien." (ECF No. 1 at 8.)

[10] While the Complaint does not explicitly state that LJSG owed BANA a duty to sell the property at a commercially reasonable price, the Complaint alleges that, "The foreclosure sale did not extinguish the Senior Deed of Trust because the sale was commercially unreasonable or otherwise failed to comply with the good faith requirement of NRS 116.1113[.]" (ECF No. 1 at 10.)

9

## IV. MOTION FOR SANCTIONS (ECF No. 43)

While the Court grants LJSG's Motion to Dismiss, the Court does not find that BANA's claims against LJSG are frivolous. There exists at least one case in the District of Nevada where the court implicitly held attorneys acting on behalf of an HOA to be a party to a claim for quiet title. *See, e.g., Bayview Loan Servicing, LLC, v. Alessi & Koenig, LLC et al.*, 962 F. Supp. 2d 1222 (D. Nev. 2013). Moreover, in a case involving similar facts, the court found the claims asserted against the defendant law firm to be non-frivolous. *See Bank of New York Mellon v. Highland Ranch Homeowners Ass'n et.al.*, No. 3:16-cv-00436-RCJ-WGC (D. Nev. Dec. 6, 2016). For these reasons, the Court denies LJSG's Motion for Sanctions.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of LJSG's Motions.

It is therefore ordered that LJSG's Motion to Dismiss (ECF No. 44) is granted and its Motion for Sanctions (ECF No. 43) is denied.

The Clerk is directed to enter judgment in favor of LJSG in accordance with this Order.

DATED THIS 10th day of July 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE